**Nathan Anthony HAYES,**
**Petitioner–Appellant,**

v.

**John PRELESNIK, Warden,**
**Respondent–Appellee.**

No. 03–1105.

United States Court of Appeals,
Sixth Circuit.

Aug. 25, 2006.

Before: GIBBONS, ROGERS, Circuit Judges; and HOLSCHUH, District Judge.*

JULIA SMITH GIBBONS, Circuit Judge.

Petitioner Nathan Hayes appeals the district court's denial of his petition for a writ of habeas corpus. In 1996, a Michigan jury convicted Hayes of armed robbery, conspiracy to commit armed robbery, and possession of a firearm during the commission of a felony. Pursuant to the certificate of appealability issued by this court, Hayes argues that his state trial counsel was constitutionally ineffective and that the Michigan courts unconstitutionally denied his request for an evidentiary hearing to pursue his claim of ineffective assistance of trial counsel in state court. For the following reasons, we affirm the district court's denial of Hayes's petition.

I.

On the night of February 20, 1995, Danevieve Hickson, a second-grade teacher at St. Mary's School in Kalamazoo,

Michigan, taught a class to children while their parents met with the religious director of the school. After the classes and meetings concluded, the parents and students left rather quickly as it had started to rain. At approximately 8:20 p.m., as Hickson walked towards her car, which was the only one left in the school parking lot, two assailants wearing ski masks approached her. Hickson could see that one had a gun. The armed assailant ordered Hickson to drop her purse and lie face down on the ground. The armed assailant took Hickson's purse, and the two men fled.

Kalamazoo police responded to the scene of the robbery; however, neither assailant was detained that evening and there were few initial leads. A subsequent tip and series of investigatory interviews led police to conclude that Hayes and a man named Bo were the assailants. After four of Hayes's acquaintances told investigating officers that Hayes had told them that Bo and he had committed the robbery, Hayes was charged with armed robbery, conspiracy to commit armed robbery, and possession of a firearm during a felony.

Before his trial, Hayes moved to suppress a black ski mask, an AK–47, ammunition, and Hickson's AT & T calling card. All of these items were seized during a search of Hayes's residence. During that search, a police officer was seriously injured when the AK–47 accidently discharged into the officer's leg. At the time of the suppression hearing, separate federal charges were pending against Hayes for the possession of the AK–47. The Michigan trial court granted Hayes's motion to suppress. Hayes pleaded guilty to the federal firearm charge before his state court robbery trial began. Hayes request-

* The Honorable John D. Holschuh, United States District Judge for the Southern District    of Ohio, sitting by designation.

ed that evidence of his federal firearm conviction be excluded from his trial. The prosecutor stipulated that he would not use the federal firearm conviction in his case in chief. The Michigan trial court ordered that the federal firearm conviction be excluded, and the case then proceeded to a jury trial.

Hickson testified at trial to the events of the robbery. Hickson testified that she could not identify her assailants. She testified that both were wearing dark clothes and ski masks, and at least one of the two was a man whose voice sounded to Hickson like that of a young, black man. Hickson described her purse, which was dark blue with brown trim and contained credit cards and a checkbook.

Nicole Thompson, Hayes's girlfriend at the time of the robbery, testified that, on February 20, 1995, after it was already dark outside, Hayes and Bo left the house that Thompson shared with Hayes. When they returned, Hayes, who appeared anxious and out of breath, said that he had "jacked" (robbed) a lady at St. Mary's Church. St. Mary's Church was only two to three blocks from the residence shared by Thompson and Hayes. According to Thompson, Hayes had a blue or black purse containing credit cards and a checkbook. Thompson testified that Hayes had a pistol and a ski mask.

Charles Olinger testified that he had known Hayes for ten years and that Hayes told him about the robbery while the two of them were in the Kalamazoo county jail. Olinger also testified that Hayes told Olinger of his intent to assert an alibi defense. Olinger testified that Hayes told him that Hayes was going to say that a man named Donald owed him money and that Donald and Bo committed the armed robbery.

Charles Frank Lewis, Hayes's neighbor and the father of Charles Olinger, then testified that Hayes had told him that Hayes had obtained a credit card from a woman Hayes had robbed in St. Mary's Church parking lot, and that Bo had been with Hayes when Hayes robbed the woman. Hayes told Lewis that he had taken the woman's keys and purse, which contained credit cards and a checkbook. Hayes described the robbery to Lewis, including his ordering the woman to lie face down and his threat to kill her. On cross-examination, Lewis testified that he was aware that his testimony might be considered by authorities in determining whether his son Olinger received early release from jail. Defense counsel questioned Lewis about his dislike of Hayes's family and his delay in reporting what he knew about the robbery to the police. In response, Lewis testified that he had not wanted to report Hayes to the police but changed his mind when Hayes gave Hayes's brother permission to go to the house of one of Lewis's neighbors and beat up the neighbor and break his television.

Steven Harper testified that he had shared a cell with Hayes at the Kalamazoo county jail and that Hayes had told him how Hayes and a man named Bo robbed a woman as she was leaving the church. According to Harper, Hayes told him that the purse contained credit cards and a checkbook.

In Hayes's defense, counsel called detective Rick Green in an effort to show that Olinger and Harper had testified on behalf of the government in order to have their sentences reduced and that Lewis had done so in order to help out his son Olinger. Hayes's trial counsel also called Hayes's mother, who testified that Donald Hollins and Bo had stopped at her house and subsequently left with Hayes.

On January 9, 1996, at the conclusion of a four-day jury trial, Hayes was convicted

in Michigan state court of armed robbery, conspiracy to commit armed robbery, and possession of a firearm in the commission of a felony. On January 23, 1996, he received concurrent twenty- to thirty-year terms on the first two charges and a consecutive two-year term on the firearm charge. During his trial and sentencing hearing in Michigan trial court, Hayes was represented by appointed counsel.

After appointment of new counsel for appeal, Hayes filed a motion to remand the matter to the trial court for an evidentiary hearing on the issue of ineffective assistance of trial counsel. The Michigan Court of Appeals denied Hayes's motion to remand for an evidentiary hearing. Shortly thereafter, the Michigan Court of Appeals denied Hayes's appeal on all grounds, including his claim of ineffective assistance of counsel. Hayes appealed all issues to the Michigan Supreme Court. On December 30, 1998, the Michigan Supreme Court denied Hayes's application for leave to appeal.

Hayes timely filed a petition for a writ of habeas corpus. After the filing of the state court record, Hayes requested that the district court order an evidentiary hearing on his ineffective assistance of counsel claim.[1] On August 3 and November 20, 2000, the district court denied without prejudice Hayes's motion for an evidentiary hearing, reasoning that the decision whether to hold an evidentiary hearing would be made upon plenary review of the petition. On July 30, 2002, a magistrate judge issued a report and recommendation that the petition be denied. Hayes timely filed objections. On December 23, 2002, the district court overruled all of Hayes's objections, approved the magistrate judge's report and recommendation, and adopted the report and recommendation as the opinion of the district court.

Hayes then filed a motion for a certificate of appealability, which the district court denied. This court first denied issuance of a certificate of appealability. Following Hayes's motion for rehearing, however, this court granted a certificate of appealability on two issues: whether Hayes received ineffective assistance of counsel and whether it was error for the Michigan court to refuse to conduct an evidentiary hearing on his ineffective assistance claim.

## II.

Hayes's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996, which permits a federal court to grant a petition for a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States...." 28 U.S.C. § 2254(d)(1). An "unreasonable application" of clearly established federal law occurs when the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The inquiry is whether the state court's application is "objectively unreasonable." *Id.* at 409, 120 S.Ct. 1495. "Clearly established" federal law, as determined by the Supreme Court, refers to

---

1. It is not entirely clear from Hayes's filings, which were made *pro se*, whether he requested an evidentiary hearing in federal district court or whether he requested the district court to remand the case to state court with instructions that the state court hold an evidentiary hearing.

"the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412, 120 S.Ct. 1495. In a habeas proceeding, this court reviews the district court's findings of fact for clear error and its conclusions of law *de novo*. *Vincent v. Seabold*, 226 F.3d 681, 684 (6th Cir.2000).

## A.

Hayes argues that his trial counsel was constitutionally ineffective in three respects. First, Hayes argues that his trial counsel failed to elicit exculpatory testimony showing that Hayes's physical stature did not match the physical description of the assailants given by the victim or witnesses. Second, Hayes argues that trial counsel allowed the jury to hear evidence of Hayes's incarceration during the investigation of the St. Mary's Church robbery. Third, Hayes argues that his trial counsel affirmatively elicited testimony that Hayes threatened potential witnesses. Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Hayes must show that trial counsel's performance fell below an objective standard of reasonableness and that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 688, 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

We turn first to Hayes's claim that his trial counsel failed to elicit exculpatory testimony or otherwise present exculpatory information concerning Hayes's incompatibility with the physical descriptions of potential suspects given by the victim and witnesses on the night of the robbery. Hickson told police that night that she believed that each of her assailants was 5'10" and approximately 160 pounds. In addition, Kalamazoo police officer Webster,[2] upon reaching the vicinity of St. Mary's Church, reportedly saw a 5'6", 130 to 140 pound black male walking northbound on Sherwood Avenue wearing dark pants and a black coat. Sherwood Avenue is only slightly south of where the robbery occurred. As Webster approached, the male subject dropped a long dark object, which was presumably a shotgun that was recovered from the scene, and ran away. Finally, a witness in the neighborhood, Larry Anthony Miller, told Webster that he and his girlfriend, Lori Argue, observed a black male remove a jacket and run eastbound on Riverview while they were walking northbound on Sherwood Avenue. Miller described the suspect as approximately 5'6", 150 pounds, and as wearing a blue shirt with hood. Despite the fact that Hayes is approximately 6'2" and 210 pounds, defense counsel did not question Hickson at trial regarding the physical height and weight descriptions that she had provided of her assailants to police on the night of the robbery. Moreover, Hayes's trial counsel did not call Webster, Miller, or Argue to testify regarding the physical descriptions which they gave to police of the alleged suspect fleeing the scene on the night of the robbery.

Initially, we note that the Michigan Court of Appeals did not consider this claim on the merits.[3] Instead, because the Michigan appellate court had previously denied Hayes's motion to remand for an evidentiary hearing so as to introduce the police reports containing the suspect de-

---

2. Officer Webster's first name does not appear in the record.

3. Thus, unlike Hayes's other claims of ineffective assistance of counsel, this claim will be reviewed *de novo*. *See Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir.2004).

scriptions and because Hayes's ineffective-assistance claim relied on these police reports, the Michigan Court of Appeals concluded that Hayes's claim was not properly before it. The district court nevertheless reviewed Hayes's claim on the merits and the Warden does not argue on appeal that the district court's wrongly considered Hayes's claim. We therefore do the same.[4]

Hayes argues that trial counsel's performance fell below an objective standard of reasonableness because none of the three physical descriptions given on the night of the robbery matches the physical stature of Hayes. According to Hayes, his trial counsel put on a minimal defense and there was no justification for not bringing the physical descriptions to the attention of the jury. Even assuming trial counsel performed deficiently, however, Hayes cannot demonstrate that he was prejudiced by such deficiency. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052. Hayes has not demonstrated a reasonable probability that the jury would not have found him guilty if counsel had questioned Hickson or the other witnesses regarding the physical descriptions of the suspects that they had given to police. Only Hickson's description clearly refers to a participant in the robbery. Moreover, four witnesses testified at trial that Hayes had independently told each of them about the robbery. Thompson was actually present when Hayes returned from the robbery with the purse. All of these witnesses were cross-examined regarding their credibility, and

the verdict reflects that the jury found them credible. In our view, the physical descriptions given on the night of the robbery, which do not call the testimony of these witnesses into question, would not have affected the judgment. We therefore cannot say with reasonable probability that "better lawyering would have produced a different result." *Ward v. United States*, 995 F.2d 1317, 1321 (6th Cir.1993).

*Matthews v. Abramajtys*, 319 F.3d 780 (6th Cir.2003), on which Hayes relies, is not to the contrary. In *Matthews*, this court provided habeas relief to a Michigan prisoner convicted of murder on the basis that his trial counsel was constitutionally ineffective for failing to develop identification evidence inconsistent with his client's physical stature. *See id.* at 784–85, 789–90. There was considerably more unused, exculpatory evidence available to defense counsel in *Matthews* than in this case, however. Defense counsel in *Matthews* failed to present alibi witnesses even though these witnesses offered to testify; further, these alibi witnesses would have testified as to the defendant's whereabouts in such a manner as to make it very difficult to conclude that the defendant could have committed the crime. Defense counsel also failed to enter available evidence that at least one witness had failed to identify his client in a show-up. Finally, defense counsel failed to make known that his client never attended the high school that one of the witnesses identifying him believed that he had attended. Reading the *Matthews* case, it is clear that the court was focused on the failure of defense counsel to present the alibi evidence and, more specifically, the failure to do so *in a bench trial* even after the trial judge had

---

4. "Procedural default is not a jurisdictional bar to review on the merits, and an appeals court is not required to address the issue sua sponte." *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir.2005) (citing *Trest v. Cain*, 522 U.S. 87, 89, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997)).

denied the defendant's motion for a directed verdict following the conclusion of the government's case and specifically told defense counsel to mount an affirmative defense. *Id.* at 789–90. *Matthews* is therefore distinguishable both in terms of the scope of counsel's errors and, in the case of the alibi defense in *Matthews*, the magnitude of such errors.

■ Hayes's second basis for arguing that trial counsel was constitutionally ineffective is that his counsel allegedly allowed the jury to hear evidence that he was incarcerated at the time that he was investigated for the St. Mary's robbery and that he had "three warrants" pending for his arrest. Prior to trial, the trial court ruled that evidence of a federal firearm conviction that Hayes had received for possession of an AK–47 would be excluded. Although there does not appear to have been any testimony directly discussing Hayes's felon-in-possession conviction, Hayes argues that testimony at trial concerning his prior incarceration and his outstanding arrest warrants prejudiced his defense. According to Hayes, his trial counsel affirmatively elicited testimony from Detective Ouding that Hayes was in jail for "six weeks" around May 1995; trial counsel failed to object when Olinger testified that he and Hayes were both inmates at the county jail when Hayes told him about the robbery; and, trial counsel failed to object when Officer Jeffrey Johnson testified that Hayes was transported from the county jail to another jail in July 1995 because Hayes's had three outstanding warrants. The Michigan Court of Appeals held that no prejudice resulted from these alleged deficiencies.

Assuming once again that counsel's performance was indeed deficient, Hayes fails to show that any prejudice resulted from the testimony of Ouding, Olinger, and Johnson. Hayes has not established a reasonable probability that the jury's knowledge of his prior incarceration affected the outcome of the proceeding. As noted above, the testimony that Hayes admitted to the robbery was substantial. In light of the testimony of the four witnesses, the Michigan court's decision that no prejudice resulted from the testimony concerning Hayes's incarceration and outstanding arrest warrants was not an unreasonable application of *Strickland.*

■ As his final challenge to trial counsel's effectiveness, Hayes argues that his counsel affirmatively elicited damaging testimony from two witnesses. First, Hayes claims that his trial counsel elicited testimony from Harper that Hayes had threatened him. On direct examination by the prosecution, Harper testified that Hayes told him that Hayes and Bo had robbed a woman at St. Mary's Church. Harper then testified that, as an incarcerated informant, his decision to testify against Hayes had resulted in threats against him, his wife, and his son. On cross-examination, defense counsel asked Harper to clarify that no threats have ever been made to him by Hayes. Harper responded that, although Hayes had not directly threatened him, other inmates had delivered threats on Hayes's behalf. The Michigan Court of Appeals determined that no prejudice resulted from the questioning on cross-examination because, given Harper's clarification that Hayes indirectly threatened him, the jury could not have been left with the impression that Hayes directly threatened Harper. This decision was not an unreasonable application of the prejudice prong of *Strickland.* Harper testified on direct examination that his role as witness had led to threats against him and his family. Although defense counsel appeared unprepared for such testimony, it does appear that she utilized cross-examination in order to cre-

ate doubt that Hayes was directly involved in whatever threats Harper had perceived. Her conduct in this regard was therefore not deficient and, even if it was, such conduct was not prejudicial because Harper had already testified that serving as a witness against Hayes had resulted in threats against him and his family.

Hayes also argues on appeal that trial counsel was deficient for eliciting damaging testimony from Lewis. Hayes's counsel questioned Lewis on cross-examination as to why he had waited six months to report what he knew about the St. Mary's Church robbery to police. Lewis stated that, although he originally intended not to get Hayes in any trouble, he had eventually decided to come forward because Hayes had given Hayes's brother permission to beat up a mutual neighbor and smash the neighbor's television. Defense counsel immediately stopped Lewis's testimony as non-responsive. Thus, as the Michigan Court of Appeals correctly determined, Lewis's testimony was not purposefully elicited but rather was volunteered in a non-responsive manner. Defense counsel's conduct was therefore neither deficient nor prejudicial.

### B.

As a second, independent basis on which this court may grant habeas relief, Hayes argues that the Michigan courts unconstitutionally denied him a forum in which to develop the factual record for his ineffective assistance of counsel claim. Hayes did not argue in state court that the refusal to grant him an evidentiary hearing on the issue of ineffective assistance of counsel amounted to a constitutional violation. Rather, Hayes requested that the Michigan Court of Appeals remand his case for an evidentiary hearing pursuant to Michigan law. After the Michigan Court of Appeals denied his motion to remand and

rejected his ineffective assistance of counsel claim, Hayes argued to the Michigan Supreme Court that the denial of his motion to remand for an evidentiary hearing constituted an abuse of the Michigan Court of Appeals' discretion, not that it amounted to a constitutional violation. Thus, Hayes never presented to the Michigan courts any claim that the refusal to afford him an evidentiary hearing was a constitutional violation. Nevertheless, Hayes's likely failure to exhaust will be excused because his claim is meritless and it would be a waste of time and judicial resources to require exhaustion or to remand for a hearing on cause and prejudice. *See Lyons v. Stovall,* 188 F.3d 327, 333–34 (6th Cir.1999).

In his current appeal, Hayes again argues that it was "black-letter law" that the Michigan appellate court was required to grant his motion to remand for an evidentiary hearing, relying on *People v. Ginther,* 390 Mich. 436, 212 N.W.2d 922 (1973) and Michigan Court Rule 7.211(C)(1)(a). To the extent that Hayes argues that the Michigan courts violated their own rules of procedure, his argument is without merit. Whether or not the Michigan courts complied with the procedural requirements of Michigan law is not a matter for this court to decide on a petition for habeas corpus relief. *See Baze v. Parker,* 371 F.3d 310, 322–23 (6th Cir.2004). Rather, in terms of granting habeas relief, the relevant inquiry is only whether the state court decision was in violation of Hayes's federal constitutional rights. *Id.*

Hayes cites no Supreme Court precedent indicating that a defendant has a constitutional right to an evidentiary hearing in state court to develop his claim of ineffective assistance of counsel on appeal. Hayes relies on only *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), wherein the Supreme Court stated

 

that "when a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution—and, in particular, in accord with the Due Process Clause." *Id.* at 401, 105 S.Ct. 830. *Evitts,* which held that a first appeal as of right is not adjudicated in accord with due process if the appellant does not have the effective assistance of counsel, *see id.* at 396, 105 S.Ct. 830, did not recognize a constitutional right to a state court evidentiary hearing to develop a claim of ineffective assistance of counsel on appeal. Thus, Hayes has not shown that the Michigan Court of Appeals' decision to deny his request for an evidentiary hearing was contrary to or an unreasonable application of clearly established federal law.

Finally, it should be noted that Hayes does not appear to challenge the district court's decision to deny him a federal evidentiary hearing. Nonetheless, to the extent that Hayes can be understood to seek a federal evidentiary hearing, the district court correctly determined that the facts which Hayes seeks to develop in such a hearing would not support habeas relief. Indeed, those materials which Hayes sought to introduce through an evidentiary hearing in state court—the allegedly exculpatory identifications of the suspects—are part of the federal habeas record in this case. Therefore, no cause for a federal evidentiary hearing exists.

### III.

For the foregoing reasons, we affirm the decision of the district court.

* The Honorable John Holschuh, United States District Judge for the Southern District of Ohio, sitting by designation.