NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0086n.06

No. 11-2002

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Jan 24, 2013*
DEBORAH S. HUNT, Clerk

JEROME HALE,                                )
                                            )
      Petitioner-Appellee,                 )     ON APPEAL FROM THE
                                            )     UNITED STATES DISTRICT
v.                                          )     COURT FOR THE EASTERN
                                            )     DISTRICT OF MICHIGAN
                                            )
BARRY DAVIS, Warden,                        )     O P I N I O N
                                            )
      Respondent-Appellant.                )
                                            )

BEFORE:  BOGGS and McKEAGUE, Circuit Judges, and CARR, District Judge.[*]

      **McKeague, Circuit Judge.**  Jerome Hale was convicted of murdering Amando Triplett and

given a mandatory life sentence.  After his conviction, Hale argued to the Michigan state courts that

his trial attorney was ineffective for failing to investigate and call an alibi witness.  The Michigan

Supreme Court ultimately denied his claims in a summary order.  Because its determination was

neither "contrary to" nor "an unreasonable application of . . . clearly established federal law," 28

U.S.C. § 2254(d)(1), we reverse the district court's decision conditionally granting Hale's petition

for a writ of habeas corpus.

_____

      [*]The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

**I.**

**A.**

On the morning of January 17, 1999, Amando Triplett was shot and killed while leaving Todd Richardson's house. Eighteen months later, after Richardson had been indicted on federal drug charges and was promised a major reduction in his sentence for providing a statement about Triplett's murder, police arrested Jerome Hale and charged him with the crime. At trial, the sole issue was the identity of the shooter and whether Hale was even present when Triplett was shot. The prosecution's case rested mainly on the conflicting testimony of two witnesses, Richardson and William Maxwell. Both men identified Hale as the shooter.[1]

In April of 1999, Richardson was arrested on federal drug conspiracy charges unrelated to Triplett's murder. In August of 1999, Richardson pleaded guilty to those charges. His sentencing was scheduled for June 6, 2000. The Triplett murder remained unsolved until federal prosecutors approached Richardson in March of 2000 with a deal. They promised to cut Richardson's sentence in half if he provided them with information about the Triplett homicide. Additionally, Richardson testified that, after his attorney spoke to the federal prosecutor, his attorney came to him and stated that "you'll have to get on the stand. You will need a conviction on it." Thus, Richardson believed Hale would need to be convicted in order for his sentence to be reduced. He gave a formal statement implicating Hale in Triplett's murder on March 17, 2000, and he testified at the preliminary exam on July 17, 2000.

---

[1]Maxwell was killed in a homicide the weekend prior to trial. At trial, his preliminary exam testimony, during which he made a courtroom identification of Hale, was read into the record.

**B.**

Hale was originally charged with first-degree premeditated murder, felony murder, and felony firearm. He retained attorney Deborah Ford.[2] Ford submitted a witness list to the trial court that included Demetria Young, Hale's girlfriend at the time of Triplett's murder. Ford also submitted a Notice of Alibi stating that at the time of Triplett's murder, Hale was at Demetria Young's residence. However, at trial, rather than using the alibi defense, Ford elected to rely on impeaching Richardson's and Maxwell's testimony and did not put on any defense witnesses.

The jury found Hale guilty of felony murder and felony firearm. The court sentenced Hale to mandatory life without parole on the murder conviction, and a consecutive term of two years of imprisonment on the felony firearm conviction.

**II.**

**A.**

Hale's direct appeal raised three claims for relief including an ineffective-assistance-of-counsel claim. But the ineffective-assistance claim did not include failure to investigate or call his alibi witness Demetria Young. Prior to his case being called for oral argument and thus prior to the state court of appeals decision on his direct appeal, Hale also filed with the court of appeals, through his attorney, an in pro per motion to remand, in which he requested an evidentiary hearing on several

---

[2]Ford tried to withdraw as Hale's counsel just prior to trial (December 18, 2000), citing a breakdown in communication that "militates against vigorous and effective representation," and "a complete breakdown of . . . their attorney-client relationship." (Mot. to Withdraw, Page ID # 829-32).

issues. The motion to remand argued for the first time that his trial counsel was ineffective for failing to investigate and call his alibi witness Demetria Young.

Hale also filed an affidavit from Demetria Young as an attachment to his motion to remand. The affidavit, which was signed by Young after Hale's conviction, detailed how Hale and Young had been together at a club the night before Triplett's murder, and how the next day they had breakfast at approximately 10:00 a.m. and went back to bed until 3:00 p.m. She claimed Hale left her house at 4:00 in the afternoon. The affidavit also stated that after Young heard Hale had been arrested, she went to court, approached Hale's attorney (Ford), and told her about Hale's alibi, but that Ford informed her she would not be needed. She stated she was never contacted again about the case.

The court of appeals denied the motion to remand in a one-line decision stating, "The Court orders that the motion to remand is DENIED." Subsequently, the Court of Appeals decided Hale's direct appeal in an unpublished decision. *People v. Hale*, No. 234038, 2002 WL 31953819 (Mich. Ct. App. December 13, 2002). Hale next filed a delayed application for leave to appeal in the Michigan Supreme Court, which was also denied.

Hale then filed his first pro se motion for relief from judgment in the state trial court raising eight separate claims, including that his trial attorney failed to call his alibi witness. The state trial court denied Hale's motion for relief from judgment.

After the court denied his motion, Hale filed a leave application in the state court of appeals, again arguing that trial counsel was ineffective for failing to investigate and call his alibi witness. Ultimately, the court of appeals denied his application "for failure to meet the burden of establishing

entitlement to relief under MCR 6.508(D)." The Michigan Supreme Court denied Hale's subsequent leave application on the same grounds.

## B.

Hale next filed a habeas petition in the federal district court. He raised several issues, including the ones upon which the district court ultimately granted the writ—his trial counsel's failure to investigate and call his alibi witness, Demetria Young. Hale also filed a motion for an evidentiary hearing in the district court for development of several issues. The district court granted Hale's motion for an evidentiary hearing on the issues of his trial counsel's failure to investigate and call his alibi witness. After the evidentiary hearing and supplemental briefing, the court issued its opinion and order conditionally granting the writ.[3] *Hale v. Davis*, 2011 WL 3163375 (E.D. Mich 2011). The warden appealed.

## III.

### A.

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts may not grant habeas relief on any claim that was adjudicated on the merits in state courts unless the adjudication resulted in a decision that: (1) was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court"; or (2) was "based on an

---

[3]The evidentiary hearing was held in December 2010. *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011) and *Harrington v. Richter*, 131 S. Ct. 770 (2011) were issued following the hearing but before the district court's opinion and order conditionally granting the writ. The district court's opinion therefore includes an analysis of the state court decisions under *Richter* and also whether the hearing or consideration of the evidence was appropriate under *Pinholster*.

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The parties do not dispute that there was a decision on the merits here. Likewise, we conclude that the Michigan Supreme Court's denial of Hale's leave application on collateral review was a decision on the merits under *Harrington v. Richter,* 131 S. Ct. 770 (2011), and thus our analysis is based on that decision.

Because the state supreme court's decision was a merits adjudication, it is entitled to AEDPA deference under 28 U.S.C. § 2254(d). In *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011), the Supreme Court held "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." This court has agreed. *Bray v. Andrews*, 640 F.3d 731, 737 (6th Cir. 2011). In *Pinholster*, the Supreme Court made sure to clarify that this limitation was not a wholesale bar on federal evidentiary hearings, and that § 2254(e)(2) would "continue[] to have force where § 2254(d)(1) does not bar federal habeas relief," such as when the state court decision was not an adjudication on the merits. 131 S. Ct. at 1401. But here, the state court decision was on the merits, and thus *Pinholster's* limitations apply.

Despite these limitations, the district court here held an evidentiary hearing and concluded that testimony from the evidentiary hearing could be considered after the court had made a determination that the state court unreasonably applied Supreme Court precedent. *Hale v. Davis*, 2011 WL 3163375, at *17 (citing *Pinholster*, 131 S. Ct. at 1412) (Breyer, J., concurring and dissenting). The district court here considered such evidence after completing its § 2254(d)(1) analysis in order to see whether it supported Hale's ineffective-assistance claim. While the district

court may have erred in considering the additional evidence on this basis, we decline to address this question because, as will be shown below, the state court did not unreasonably apply Supreme Court precedent. Thus, *Pinholster's* limitations are clearly operative and should have restricted the district court's review to the record before the state court.

**B.**

In assessing the reasonableness of an unexplained merits adjudication by a state court under § 2254(d), a habeas court must "determine what arguments or theories supported or . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Richter*, 131 S. Ct. at 786. Where the state court did not elucidate the reasons for its decision, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 784. This "highly deferential standard" requires that determinations made in state court "be given the benefit of the doubt." *Pinholster*, 131 S. Ct. at 1398 (internal quotation marks omitted).

Hale's claims rest on the effectiveness of his counsel at trial. Accordingly, to prevail on his claim, Hale must demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Foust v. Houk*, 655 F.3d 524, 533 (6th Cir. 2011). To show deficiency, Hale must overcome the "strong[ ] presum[ption]" that his counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. To demonstrate prejudice, Hale must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." *Id.* at 694. This means he must show a "'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster*, 131 S. Ct. at 1403 (quoting *Richter*, 131 S. Ct. at 791).

When analyzing a *Strickland* claim under § 2254(d), this Court's review is "'doubly deferential.'" *Pinholster*, 131 S. Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 129 (2009)). Accordingly, the key question "'is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.'" *Foust*, 655 F.3d at 533–34 (quoting *Richter*, 131 S. Ct. at 788).

## C.

Hale makes two claims of ineffective assistance of counsel. First, that his counsel was ineffective for failing to conduct a reasonable investigation of his alibi witness. Second, he claims that his counsel was ineffective for failing to present his alibi witness at trial. The fatal defect in both claims is that Hale has failed to establish that either his counsel's investigation or her strategy were objectively unreasonable.

A lawyer's *Strickland* duty "'includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence.'" *Ramonez v. Berghuis*, 490 F.3d 482, 487 (6th Cir. 2007) (quoting *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005)). "The focus in failure-to-investigate claims . . . is the reasonableness of the investigation (or lack thereof)." *English v. Romanowski*, 602 F.3d 714, 726 (6th Cir. 2010) (citing *Wiggins v. Smith*, 539 U.S. 510, 527 (2003)). "In assessing the reasonableness of an attorney's investigation, . . . a court must

consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527.

In the bulk of our failure-to-investigate cases, the record shows that counsel has either completely failed to investigate a potential witness, *see, e.g., Avery v. Prelesnik*, 548 F.3d 434, 437 (6th Cir. 2008) (finding ineffective assistance where counsel instructed an investigator to contact potential alibi witnesses, but where counsel never personally tried to contact any of those witnesses); *Stewart v. Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2006) (concluding counsel ineffective where alibi witness was never contacted or subpoenaed), or the record shows that had the attorney taken some investigatory steps he or she would have discovered additional crucial information. *See Ramonez*, 490 F.3d at 487 (finding counsel ineffective because through even minimal investigation "he would have learned that [witnesses] *could* testify as to what took place in the house, and that their testimony would have supported Ramonez's version of events.").

By contrast, Hale has not shown that his attorney failed to speak with Young, or that there was any additional information his attorney could have learned by contacting Young again after their initial encounter. In fact, Young's affidavit completely undermines Hale's claim. In her affidavit, Young stated that Hale and Young had been together at a club the night before Triplett's murder, and that the next day they had breakfast and went back to bed until 3:00 p.m.. She asserted that Hale left her house at 4:00 in the afternoon. She also stated that after Young heard Hale had been arrested, she approached Ford during a pretrial hearing and told her that Hale was with her at the time of the shooting.

Young's affidavit establishes that Ford both knew about Young and precisely what she would testify if called as a witness. Thus, Hale's claim is essentially that Ford should have had additional discussions with Young about her potential testimony. But Hale does not allege, and we cannot discern from the record before the state court, what more Ford could have learned from Young had Ford pursued this route. Thus, the record does not establish that there was any reason for Ford to further discuss Young's potential testimony or that Ford's investigation of Young's potential testimony was unreasonable. *Wiggins*, 539 U.S. at 527.

We additionally conclude that the state court did not err in deciding there was a reasonable basis supporting Ford's later decision not to call Young. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Strickland*, 466 U.S. at 690.

At the close of the prosecution's case, Hale's counsel discussed on the record several reasons she did not call any witnesses, including Young. Those reasons included unavailability, unwillingness to appear, and change in strategy. Hale agreed with her assertions as to why those witnesses were not called. After his conviction, the issue was again discussed at Hale's sentencing where Hale's counsel specifically asserted that she and Hale had agreed not to do the alibi defense. She also stated she did not know why Young did not show up at Hale's trial. But this latter statement is ambiguous with respect to whether Ford expected Young to show up and be called as a witness, or whether, because Young was Hale's girlfriend at the time, Ford just had a general expectation that Young would be at Hale's trial. What *is* clear from the record is that Ford elected not to pursue the alibi defense and chose instead to rely on discrediting the prosecution's witnesses.

"Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision." *Richter*, 131 S. Ct. at 786. There is ample support here that Ford's decision not to call Young was a reasonable strategic decision. Ford tried to undermine the prosecution's case by exposing all of the inconsistencies in Richardson's and Maxwell's testimony. She also attacked Richardson's motives in testifying, and got him to admit that he had taken a deal from prosecutors and that he thought Hale needed to be convicted in order for the deal to proceed. She also called into question Richardson's identification of Hale through the kitchen window and Maxwell's ability to see the shooter.

Although there may have possibly been some benefit to Hale for his counsel to call Young to the stand, "we cannot say that it was an unreasonable application of *Strickland* for the state court to [conclude] that [Hale] failed to rebut the presumption of reasonableness with respect to his attorney's decision here." *Romanowski*, 602 F.3d at 726. As the Supreme Court recently noted in *Richter*: "To support a defense argument that the prosecution has not proved its case it sometimes is better to try to cast pervasive suspicion of doubt than to strive to prove a certainty that exonerates. All that happened here is that counsel pursued a course that conformed to the first option . . . In light of the record here there was no basis to rule that the state court's determination was unreasonable." *Richter*, 131 S. Ct. at 790.

Because Hale has not shown his trial attorney's conduct was objectively unreasonable, we decline to address whether he was prejudiced by her conduct. *See Sowell v. Bradshaw*, 372 F.3d 821, 838 (6th Cir. 2004) ("The court is not required to address both components of *Strickland* if one component fails.") (citing *Strickland*, 466 U.S. at 697) ("[T]here is no reason for a court deciding

an ineffective assistance claim to approach the inquiry in the same order or even to address both

components of the inquiry if the defendant makes an insufficient showing on one.").

## IV.

For the foregoing reasons, we **REVERSE** the judgment of the district court conditionally

granting the writ of habeas corpus.