NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0277n.06

No. 15-1195

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

May 23, 2016

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DAX HAWKINS, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | On Appeal from the United States |
| v. | ) | District Court for the Eastern District |
| | ) | of Michigan |
| JEFFREY WOODS, Warden, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |

_____/

**Before: GUY, BATCHELDER, and COOK, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.** Petitioner Dax Hawkins, a Michigan prisoner, was convicted by a jury of murder, assault with intent to commit murder, and two related firearm offenses. Hawkins appeals for a second time from the district court's denial of habeas corpus relief with respect to his claim that trial counsel rendered ineffective assistance. For the reasons that follow, we affirm the district court's judgment.

**I.**

At about 11:25 p.m. on October 19, 2003, Jason Taylor and Earl Riley were shot multiple times while seated in Taylor's car waiting to complete a drug transaction in Detroit, Michigan. Riley was dead when the police arrived, but Taylor survived five gunshot wounds and identified Dax Hawkins and an unknown dark-skinned man as the shooters. The unknown man was never

found.  However, Taylor testified that he knew Hawkins from childhood, and that he had been selling marijuana to Hawkins in quantities of one to twenty pounds for six to twelve months prior to the shooting.  Further, according to Taylor, Hawkins had arranged and participated in the failed transaction that ended in the shooting.

Taylor testified, under a grant of immunity, that Hawkins purchased a couple of pounds of marijuana from him between about 8:30 or 9:00 p.m. on the night of the shooting.  During that transaction, Hawkins said he had another customer who wanted to purchase 20 or 25 pounds of marijuana and would be there in about an hour.  Taylor said he could do it, and told Hawkins to call when the buyer was available.  When Hawkins called, Taylor took Riley with him and drove to meet Hawkins and his customer with two plastic garbage bags of marijuana.  Although an agreement was reached, the buyer did not produce the money and Taylor and Riley left with the marijuana.

A short time later, Hawkins called Taylor and said the buyer had been suspicious but had the money and wanted to complete the transaction.  Taylor took Riley with him to meet Hawkins and the buyer again, and the marijuana was transferred to the trunk of the other car.  Then, at Hawkins' suggestion, both cars were driven around the block and onto another street to avoid being seen completing the transaction.  Taylor parked in front, waited a few minutes, and then called Hawkins who said he was counting the money.

Taylor testified that Hawkins walked up to his car from behind, got into the rear passenger seat, and said there might be a problem with the grams.  As Taylor turned to respond, he saw Hawkins with a gun and felt and heard Hawkins shooting.  He also saw the buyer run up and start shooting.  Taylor saw Riley slumped over, and awoke in the hospital with lasting injuries.  A few months later, Hawkins was located in federal custody where he was being held

on a probation violation and extradited to Michigan.

Hawkins asserted an alibi defense and counsel filed a notice of alibi stating that Hawkins "was not at the scene of the crime but was at [Club] Dot.Com on Grand River in the City of Detroit, Michigan." The notice listed four witnesses: Nikia Brockington, Nyree Phillips, Eric Gibson and Adan Knowles. Prior to jury selection, however, defense counsel stated on the record that he was no longer planning to call the alibi witnesses because he "investigated it and saw that none of them were cooperative." Instead, defense counsel attacked the credibility of Taylor, who was the only witness to identify Hawkins, and argued that the unknown buyer was the sole shooter. At the close of the prosecution's case, defense counsel referred to the alibi witnesses again and stated: "I already put on the record at the beginning of the case that I wasn't planning on calling them. And I want to confirm with Mr. Hawkins his agreement that I'm not to call them." Hawkins affirmatively agreed.

Hawkins did not testify, and the jury found him guilty of all counts. At sentencing, Hawkins maintained his innocence and insisted that he had been at Club Dot.Com at the time of the shooting. The trial judge sentenced Hawkins to life in prison for first-degree murder, 50 to 100 years for assault with intent to commit murder, and lesser terms for the felon-in-possession and felony firearm convictions.

Appellate counsel filed an unsuccessful motion for new trial, and raised four claims of error on direct appeal that are not before this court. Hawkins raised several more claims of error in a pro se supplemental brief, including one for ineffective assistance of counsel. His supplemental brief referred to and was accompanied by a pro se motion to remand for an evidentiary hearing under *People v. Ginther*, 212 N.W.2d 992 (Mich. 1973). Hawkins also filed an amended motion to remand, to which he appended his own sworn "Affidavit and Offer of

Proof" dated March 9, 2006. In that Affidavit, Hawkins provided the details of his alibi defense and claimed that counsel had abandoned an alibi defense unilaterally, against his wishes, and without conducting a proper investigation.

The Michigan Court of Appeals denied both the motion to remand and the amended motion to remand in a single order "for failure to persuade the Court of the need to remand at this time." Six months later, the Michigan Court of Appeals issued a reasoned decision affirming Hawkins' convictions and expressly limited its review of his ineffective-assistance-of-counsel claims to mistakes apparent from the record because no *Ginther* hearing had been held. The Michigan Supreme Court subsequently denied the application for leave to appeal because it was "not persuaded that the questions presented should be reviewed."

This pro se petition for writ of habeas corpus followed, asserting the same claims that were raised on direct appeal. The district court denied habeas relief with respect to each of the claims, but granted a certificate of appealability on the sole claim of ineffective assistance of counsel. After appointing counsel to represent Hawkins, this court remanded for reconsideration of the claim because it was discovered that several state-court records—including his Affidavit and Offer of Proof—had been omitted from the Rule 5 materials filed in the district court. After supplemental briefing, the district court reexamined the ineffective-assistance-of-counsel claim and again denied habeas relief. This appeal followed.

## II.

This court reviews the legal basis for the district court's decision *de novo*, and any factual findings for clear error. *Awkal v. Mitchell*, 613 F.3d 629, 633 (6th Cir. 2010). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), habeas relief may not be granted with respect to a claim that was "adjudicated on the merits in State court proceedings"

unless it "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2). A petitioner must overcome the limitations of § 2254(d)(1) and (2) on the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398, 1400 n.7 (2011). Hawkins argues that AEDPA deference should not apply because the state court decision was based on an unreasonable determination of the facts, involved an unreasonable application of clearly established law, and did not adjudicate the claim on the merits. These arguments are addressed in turn.

## A.      Adjudication on the Merits

Looking through the Michigan Supreme Court's summary denial, we review the Michigan Court of Appeals' decision because it was the last reasoned state-court decision to address the claim that trial counsel rendered constitutionally ineffective assistance. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Under *Strickland*, which is incorporated into Michigan's standard, a defendant must show (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that the deficient performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Ballinger v. Prelesnik*, 709 F.3d 558, 561 (6th Cir. 2013).

Hawkins contends that the state-court decision was not an adjudication "on the merits" because the state court did not consider the "full" record; namely, the Affidavit Hawkins submitted in support of remand for a *Ginther* hearing. However, the state court's denial of remand for an evidentiary hearing on these claims does not make its subsequent decision

rejecting those claims anything other than an adjudication "on the merits." *Ballinger*, 709 F.3d at 561-62; *see also Lint v. Prelesnik*, 542 F. App'x 472, 481-82 (6th Cir. 2013). Also, the state court's summary denial of the motion to remand is presumed to be a decision on the merits. *See Nali v. Phillips*, 681 F.3d 837, 852 (6th Cir. 2012). It is evident that the reasoned state-court decision expressly rejecting Hawkins' claims that trial counsel performed deficiently was an adjudication on the merits for purposes of § 2254(d). *See Wiggins v. Smith*, 539 U.S. 930, 953-54 (2003); *Rayner v. Mills*, 685 F.3d 631, 638 (6th Cir. 2012).[1]

## B.    Due Process Principles

Hawkins argues that AEDPA deference should not apply because the Michigan Court of Appeals denied his motion to remand for a *Ginther* hearing and then disregarded the Affidavit he submitted in support of remand for a *Ginther* hearing. That is, relying on the unreasonable-application clause of § 2254(d)(1), Hawkins contends that the state court's rejection of his deficient-performance claims under *Strickland* involved "an antecedent unreasonable application of" long-established due process principles. *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007).

In *Panetti*, the Court held that the state court's competency determination was dependent on an unreasonable application of clearly established Supreme Court precedent because the state court failed to comply with the procedures required by *Ford v. Wainwright*, 477 U.S. 399 (1986), for determining a prisoner's competency to be executed. *Panetti*, 551 U.S. 934-35. Addressing a similar argument by the petitioner in *Loza*, this court held that AEDPA deference could not be avoided under *Panetti* because the state court's ruling—that the requirements for discovery on a claim of selective prosecution had not been met—did not involve an unreasonable application of *United States v. Armstrong*, 517 U.S. 456, 460 (1996). *Loza v. Mitchell*, 766 F.3d 466, 493-94

---

[1]We assume that the state-court decision was not an adjudication on the merits with respect to the prejudice prong—except for the finding that Hawkins "fail[ed] to demonstrate any prejudice from his trial counsel's strategic decision to waive presentation of the Nextel representative." *See Rayner*, 683 F.3d at 638.

(6th Cir. 2014), *cert. denied*, 135 S. Ct. 2829 (2015); *see also Wiley v. Epps*, 625 F.3d 199, 206-07 (5th Cir. 2010) (applying *Panetti* where state-court decision involved unreasonable application of requirements for adjudication of claim under *Atkins v. Virginia*, 536 U.S. 304 (2002)).

To the extent Hawkins can be understood to argue that the state court erred or abused its discretion in denying remand for a *Ginther* hearing under M.C.R. 7.211(C), a perceived violation of state law would not be a basis for federal habeas relief. *Hayes v. Prelesnik*, 193 F. App'x 577, 584 (6th Cir. 2006) (citing *Baze v. Parker*, 371 F.3d 310, 322-23 (6th Cir. 2004)). On appeal, Hawkins relies on *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972), for the general proposition that long-standing due process protections guarantee affected parties notice and a meaningful opportunity to be heard on federal constitutional claims. However, this frames the clearly established Supreme Court precedent at too high a level of generality and "is far too abstract to establish clearly the specific rule [petitioner] needs." *Lopez v. Smith*, 135 S. Ct. 1, 4 (2014) (per curiam). Hawkins has not identified any Supreme Court precedent specifically holding that due process requires an evidentiary hearing or establishing other procedural requirements for adjudicating a claim of ineffective assistance of counsel. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014); *see also Hayes*, 193 F. App'x at 584-85 (rejecting claim that due process afforded a right to an evidentiary hearing to develop a claim of ineffective assistance of counsel). Thus, as the district court recognized, *Panetti* is of no avail to Hawkins because he has not identified clearly established Supreme Court precedent that affords him the antecedent due process protection he seeks.

**C.      *Strickland***

Hawkins contends that, whether his Affidavit was overlooked or disregarded, the state court's rejection of his claim that counsel's performance was deficient was based on an unreasonable determination of the facts and involved an unreasonable application of *Strickland*. "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).   Further, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 89, 101 (2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).[2]

Relying on § 2254(d)(2), Hawkins argues that the state court unreasonably found the evidence did not support his claim of a conflict between him and counsel concerning trial strategy or refute counsel's statement that he had investigated his alibi defense.  As noted earlier, the state-court record shows that counsel asserted an alibi defense claiming that Hawkins had been at the Dot.Com nightclub at the time of the shooting.  But, counsel abandoned the defense prior to jury selection, stating that he had investigated and found the witnesses were not cooperative, and Hawkins affirmatively agreed with that decision at the close of the prosecution's case.

Contradicting the trial court record, Hawkins claimed in his Affidavit that he was blindsided by counsel's unilateral decision and was "dead set against" pursuing a defense that placed him at the scene and foreclosed him from testifying on his own behalf.  Hawkins explained that he called his fiancée Nyree Phillips after the first day of trial and was told by her

---

[2]Although 28 U.S.C. § 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed correct," the interplay between § 2254(e)(1) and § 2254(d)(2) remains unresolved.  *Wood*, 558 U.S. at 299; *see also McMullen v. Booker*, 761 F.3d 662, 670 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 1534 (2015).  Because the State does not argue that § 2254(e)(1)'s standard applies, we need not resolve this open question.  *See Brumfield v. Cain*, 135 S. Ct. 2269, 2282 (2015).

that defense counsel's investigator did not interview the alibi witnesses because they could not all meet at the same time. Not only are such self-serving averments viewed with skepticism, but waiver of the right to testify is presumed from a defendant's silence at trial. *See, e.g.*, *Thomas v. Perry*, 553 F. App'x 485, 487 (6th Cir. 2014); *Freeman v. Trombley*, 483 F. App'x 51, 58 (6th Cir. 2012); *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000). More importantly, whether or not it might be debatable, it was not an unreasonable determination of fact for the state court to find that Hawkins had not demonstrated that there was a conflict with counsel concerning trial strategy.

It was not unreasonable for the state court to find support was lacking for the assertion that other witnesses or evidence supported his alibi defense: namely, Charmaine Wright, a woman named Maria, the manager of Baker's Lounge, or surveillance camera footage from Baker's Lounge. There is no dispute that neither these witnesses nor the surveillance camera were mentioned in the trial court record. Instead, Hawkins presented the state court with his own affidavit stating that he provided his attorney with a detailed account of where, when, and with whom he claimed to have been on the night of the shooting. That included his claim that he went to the Locker Room bar in Detroit at 7:45 p.m., where he met up with Charmaine, Maria, and several other women; that Charmaine and her friends joined him at Baker's Lounge in Detroit from 8:30 p.m. until approximately 9:00 p.m.; and that he invited them to come to a "going away" party for him at Club Dot.Com. Hawkins stated that he left Baker's at 9:00 p.m., picked up his fiancée, and met Eric Gibson and Adan Knowles at Club Dot.Com, where they had a party from 9:45 p.m. until 1:30 a.m. because Hawkins was surrendering to federal custody the next day. Hawkins also identified Nikia Brockington as a witness to his whereabouts that night. But, in his affidavit, Hawkins acknowledged having advised his attorney that Charmaine and Nikia

were unwilling to testify on his behalf and that Maria had familial ties to the surviving victim. With only his own affidavit for support, Hawkins has not shown that the state court's decision was based on an unreasonable determination of the facts. *Wood*, 558 U.S. at 301.

Finally, Hawkins argues that the state court's rejection of his claim that counsel was ineffective involved an unreasonable application of *Strickland*. Importantly, when a claim is governed by both *Strickland* and § 2254(d)(1), review of the state court's decision is doubly deferential because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. On habeas review, federal courts must afford "both the state court and the defense attorney the benefit of the doubt." *Burt*, 134 S. Ct. at 13. Thus, "the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

Here, a fair-minded jurist could conclude that counsel did as he said he had, and made sufficient investigation of the alibi defense to support a reasonable strategic decision not to pursue the alibi defense. Although the record does not contain evidence concerning the investigation counsel indicated he had undertaken, "the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt*, 134 S. Ct. at 17 (quoting *Strickland*, 466 U.S. at 689). Moreover, it would not be objectively unreasonable for a fair-minded jurist to conclude that counsel's conduct involved a reasonable strategic decision not to pursue an alibi defense because witnesses were not cooperative, and to rely instead on challenging the prosecution's evidence and attacking the credibility of the one eye witness. *See Harrington*, 562 U.S. at 109; *Hale v. Davis*, 512 F. App'x 516, 522 (6th Cir. 2013).

*Hawkins v. Woods*

**AFFIRMED.**